# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| John Allen Klebe, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:14-cv-45 |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **AND ORDER** |
| City of West Fargo, Skyler Dutton, | ) | |
| West Fargo Police Department Officer, | ) | |
| in his individual capacity, James P. Baluik, | ) | |
| West Fargo Police Department Officer, | ) | |
| in his individual capacity, Ryan M. Woullet, | ) | |
| West Fargo Police Department Officer, | ) | |
| in his individual capacity, Joseph D. Birrenkott, | ) | |
| West Fargo Police Department Officer, | ) | |
| in his individual capacity, Gerald K. Boyer, | ) | |
| West Fargo Police Department Officer, | ) | |
| in his individual capacity, Derek A. Cruff, | ) | |
| West Fargo Police Department Officer, | ) | |
| in his individual capacity, Timothy A. Runcorn, | ) | |
| West Fargo Police Department Officer, | ) | |
| in his individual capacity, Trent J. Stanton, | ) | |
| West Fargo Police Department Officer, | ) | |
| in his individual capacity, Gregory C. Warren, | ) | |
| | ) | |
| Defendants. | ) | |

This case is before the court for screening pursuant to 28 U.S.C. § 1915A because Plaintiff John Allen Klebe (Klebe) is a prisoner seeking redress from governmental actors. Klebe alleges violations of 42 U.S.C. § 1983 by nine officers of the West Fargo Police Department (WFPD). The violations alleged are use of excessive force in removing Klebe from a vehicle that crashed during a police pursuit, and failure to prevent a neck injury during removal from the vehicle. Klebe named each of nine officers, solely in their individual capacities, as defendants. Additionally, Klebe named the City of West Fargo as a defendant, asserting its police officers were not properly trained.

**Summary of Recommendations and Order**

Because the complaint does not plead a plausible claim against six of the nine WFPD officers, it is **RECOMMENDED** that the complaint be dismissed in its entirety as against those six individuals. Similarly, the complaint does not plead a plausible claim against the City of West Fargo, and it is **RECOMMENDED** that the complaint be dismissed in its entirety as against the City.

Liberally construed, the complaint alleges a plausible claim against Officer Sklyer Dutton, Officer Ryan Wuollet, and Officer Joe Birrenkott for use of excessive force in removing Klebe from his vehicle. Service on those three defendants will therefore be **ORDERED**. But, it is **RECOMMENDED** that the complaint against those three officers, insofar as it alleges failure to prevent a neck injury, be dismissed.

**Facts**

Although, generally, only the facts alleged in the complaint are considered in determining whether it states a claim, documents attached to the complaint may be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986); Hughes v. Banks, 290 F. App'x 960, 961 n.1 (8th Cir. 2008) (per curiam); Fed. R. Civ. P. 10(c) (stating a copy of a written instrument attached to a pleading is part of the pleading for all purposes). The following facts are therefore summarized from the complaint and its attachments.

On September 10, 2012, Klebe was the driver of a vehicle that was the subject of a WFPD pursuit. It is not apparent from the complaint what led to initiation of the pursuit. During the pursuit, Klebe's vehicle first crashed into a WFPD vehicle and later crashed into a cement truck near a sidewalk construction site. After the second crash, Klebe and his passenger were removed from the vehicle, and F-M Ambulance personnel transported Klebe to a local hospital.

Klebe alleges that the defendants used excessive force in removing him from his vehicle after the crash, resulting in ankle and neck injuries. Klebe makes the following statement of his claims:

> Plaintiff was an arrestee at the scene on September 10th, 2012, by the Defendants. Plaintiff's foot was lodged in the foot pedal area of his crashed and wrecked automobile. Defendant[]s failed to call or wait for the proper extraction personnel and equipment and forcefully pried Plaintiff's foot from the lodged position, and in doing so broke Plaintiff's ankle. This injury resulted directly and only from the use of force that was excessive to the need and this force was objectively unreasonable. Any reasonable officer in this situation would have known that breaking Plaintiff's ankle, in order to place Plaintiff under arrest, was not justified by any legitimate law enforcement management need, as Plaintiff was hand-cuffed, and this brutality was completely out of proportion to that need and any reasonable officer would know or reasonably should have known, the breaking of Plaintiff's ankle would cause a constitutional violation. There was no need for force or brutality and such is repugnant to the conscience of mankind. Law Enforcement caused serious and needless harm to Plaintiff. See, Exhibit-#1, Page-3, Narrative, which states: ". . . had obvious swelling and deformity to right ankle TIB FIB AREA."
>
> . . . .
>
> An unknown[] West Fargo Police Department officer placed a C-collar upon Plaintiff, but nobody was holding C-spine. See, Exhibit-#1, Page-3, Narrative, which states: ". . . was in a C-collar, but nobody was holding C-spine[.]" This failure to hold and immobilize Plaintiff's C-spine was objectively unreasonable, and now Plaintiff has headaches, neck pain, upper back pain and daily trouble focusing and concentrating on day to day tasks and duties. The City of West Fargo had a duty to properly train their officer[]s as First Responder[]s, and the failure to properly train and the Defendant's eagerness to arrest Plaintiff has caused serious and needless harm. Clearly there was a lack of training or supervising, and this was a constitutional violation, which Defendant should have known was unreasonable.

(Doc. #6 at 7-9).

Attached to the complaint are four WFPD reports about the events surrounding the vehicle crash. None of those reports refer to Klebe's foot being lodged in the foot pedal area of his vehicle. One of the reports states the following regarding Klebe's removal from his vehicle:

3

>    I then approached the vehicle and attempted to provide medical care for the driver and passenger who at the time were both very groggy and unresponsive. The driver was identified as a JOHN ALLEN KLEBE and passenger was identified as an ELLRIC ALFRED GIROUX II. I attempted to open the driver's door, but it was stuck, and I then leaned JOHN back into his seat as he was slouched over and appeared to be having respiratory problems. When I leaned him back he started to breathe normally and at that point became responsive, but very groggy. I then went over to the passenger, ELLRIC, and held his neck and head stable until paramedics arrived as he was complaining of intense neck and chest pain. Paramedics then arrived on scene and then transported ELLRIC and JOHN to the hospital.

(Doc. #6-4 at 1-2). Another officer reported:

> The driver appeared to be unconscious when I first arrived and then he regained consciousness and was able to speak. He asked me on three separate occasions, what had happened, claiming to have no recollection of what had happened at all. A short while later, FM Ambulance responded to the scene and was able to remove the passenger out of the passenger[']s side door onto a backboard and he was transported away from the scene by ambulance. The driver's side door that I was standing at was jammed and was unable to be opened. The paramedics and officers on scene worked together to remove the driver from the driver's seat out of the car through the passenger's side. His neck was immobilized and [he] was transported out on a backboard. He was then transported away from the scene by the ambulance.

(Doc. #6-5 at 1).

Also attached to the complaint is a copy of an F-M Ambulance patient care record. That record does not mention WFPD personnel being involved in removing Klebe from his vehicle. The F-M Ambulance record documents that there were other emergency personnel already present when the ambulance team that cared for Klebe arrived at the crash site. ("Called by 6742 on scene of a MVC for additional units needed.") (Doc. 6-2 at 3) (capitalization altered). The F-M Ambulance record states:

> [Upon arrival] found pt in driver[']s seat of vehicle. Pt was alert and talking but confused. . . . Pt was already in C-collar but nobody was holding C-spine. My partner climbed into vehicle and held C-spine while we worked on getting him out. Pt was asking the same questions over and over again. Pt was unable to be removed from drivers side door so he was removed out passenger side with C-spine control the whole time. Pt only complaint is of right ankle pain. Once in ambulance 2nd

4

survey was done. Pt has several small abrasions on arms and head. Small lac to the chin and a small hematoma on top of head. Pt has obvious swelling and deformity to right ankle tib fib area. Pulse strong both radial and pedal. Pt was transported emergent to Essentia due to damage and confusion. En route IV was started and [sic] 16G left forearm. Pt continues to ask what happened and what was going on. Pt care turned over to Essentia trauma team verbal report given.

(Doc. #6-2 at 3) (capitalization altered).

Klebe's vehicle crashed into the cement truck at "approximately the 1800 block of Main Avenue East." (Doc. #6-3 at 2). Prior to that, Klebe hit a WFPD vehicle, which was being driven by Officer Jason Balvik. Balvik's vehicle was hit near 17th Street and 8th Avenue East, (Doc. # 6-6 at 1), which a city map shows to be approximately eight blocks from the location where Klebe's vehicle crashed. Balvik's vehicle was disabled by the crash, and the WFPD reports show that Balvik had no further involvement with Klebe after Balvik's vehicle was disabled.

WFPD officers arrested Klebe the day of the crash, though, from information in the complaint and its attachments, it is not clear whether Klebe was arrested prior to transport to the hospital or while he was a patient in the hospital emergency room. In the complaint, Klebe states he was handcuffed at the time he was removed from his vehicle. (Doc. 6 at 8). But, one of the WFPD reports states the officer was directed to go to the hospital to arrest him:

> Both subjects [Klebe and the passenger in his vehicle] were transported to Essentia Hospital and I was directed to go to Essentia and place KLEBE under arrest for aggravated reckless driving and possible other charges. When I arrived, KLEBE was in handcuffs and he was in room #1 at Essentia Emergency Room.

(Doc. #6-3 at 2-3). Another report states:

> The driver, JOHN, was ultimately cleared from the hospital and taken to the Cass County Jail per SERGEANT BOYER and booked in on charges of Aggravated Assault on a Police Officer, Aggravated-Reckless Endangerment, Felony-Criminal

>    Mischief, Driving with No Insurance, Fleeing in a Motor Vehicle, Driving under Suspension, and Possession of Drug Paraphernalia.

(Doc. #6-4 at 2).

## Standard of Initial Review

Because Klebe is a prisoner and proceeding in forma pauperis on a claim against governmental defendants, his claim is subject to screening under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A. In conducting a PLRA screening, the court is to identify cognizable claims and to dismiss any claims that are frivolous, malicious, fail to state a claim, or seek monetary relief from an immune defendant. Id.

To state a cognizable claim, the complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2), as interpreted by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), Ashcroft v. Iqbal, 556 U.S. 662 (2009), and their progeny. In construing a prisoner's pro se complaint, a court is to take a liberal approach and is to hold a pro se litigant to a less stringent pleading standard than would be required of attorneys. Erickson v. Pardus, 551 U.S. 89, 93 (2007). To meet the Twombly/Iqbal standard, a complaint must present a "plausible" claim, and must give the defendants fair notice of the claim and grounds upon which it rests. E.g., Zink v. Lombardi, No. 14-2220, 2015 WL 968176, at *3-4 (8th Cir. Mar. 6, 2015).

While facts alleged in the complaint are to be accepted as true, conclusory allegations of the elements of a cause of action are insufficient to state a claim that is plausible on its face. Iqbal, 556 U.S. at 678. If, however, the complaint includes facts that undermine the claim, the court is not required to ignore those unfavorable facts; rather, the court may conclude from the alleged facts as a whole that no cognizable claim is stated as a matter of law. E.g., Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007) ("[A] plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery.")

**Excessive Force Claims Under Section 1983**

At minimum, a complaint seeking relief under 42 U.S.C. § 1983 must allege: 1) a violation of a right secured by federal law; 2) that the alleged violation was committed by a person acting under color of state law; and 3) a sufficient causal link between the alleged violation and the basis upon which a defendant is alleged to be responsible. Government actors who are sued for money damages in their individual capacities must be alleged to have been personally involved or directly responsible because § 1983 does not impose respondeat superior liability. Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

Klebe alleges that WFPD officers used excessive force in the course of removing him from his vehicle. It is not clear that Klebe alleges the removal from his vehicle occurred during the course of his arrest; construing the pro se complaint liberally, this court assumes that to be his allegation. Any claim of excessive force by law enforcement officers, whether during the course of an arrest, an investigatory stop, or other seizure, is to be analyzed under the objective reasonableness standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989). "The key question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Nance v. Sammis, 586 F.3d 604, 610 (8th Cir. 2009) (quoting Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005)) (internal quotation marks omitted). In evaluating the reasonableness of an officer's use of force, a court is to consider the totality of the circumstances, including whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by fleeing. Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009).

**Claims Against Individual WFPD Officers**

Klebe asserts individual claims against nine WFPD officers. He does not assert what specific role any of those nine officers is alleged to have had in removing him from his vehicle. From the various reports he attached to the complaint, it appears that at least six of the nine officers were not involved in removing Klebe from his vehicle.

Officer James Balvik: Balvik was initially involved in the pursuit of Klebe's vehicle, but Balvik's vehicle was disabled prior to Klebe's vehicle crashing into the cement truck. Balvik was taken from his vehicle to a local hospital, (Doc. # 6-6 at 1), and there are no facts suggesting he was at the truck crash site while Klebe was removed from his vehicle.

Detective Tim Runcorn: The attached reports document that Runcorn was at the site where Balvik's vehicle crashed, took photos of that vehicle, and prepared Balvik's vehicle for towing to the WFPD. Runcorn also reported that he left the scene of the Balvik crash to notify Balvik's wife of the crash. (Doc. # 6-6 at 1). There are no facts suggesting that Runcorn was at the truck crash site while Klebe was removed from his vehicle.

Detective Trent Stanton: Stanton, like Runcorn, was at the site where Balvik's vehicle crashed and assisted Balvik until he was taken to the hospital. (Doc. # 6-6 at 1). There are no facts suggesting that Stanton was at the truck crash site while Klebe was removed from his vehicle.

Detective Derek Cruff: Cruff was also involved in assisting Balvik at the site where Balvik's vehicle crashed, and he and Runcorn left that site to notify Balvik's wife of the crash. (Doc. # 6-6 at 1). There are no facts suggesting that Stanton was at the truck crash site while Klebe was removed from his vehicle.

8

Sergeant Gerald Boyer: In the WFPD reports, the only mention of Boyer's involvement was in transporting Klebe from the hospital to the Cass County Jail. (Doc. # 6-4 at 2). There are no facts suggesting that Boyer was at the truck crash site while Klebe was removed from his vehicle.

Officer Gregory Warren: Warren's name is not mentioned in any of the WFPD reports. His name is listed in the caption and in the list of parties in the complaint, (Doc. # 6 at 6), but there are no facts suggesting that Warren was present at the truck crash site or that he was involved in removing Klebe from his vehicle.

To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Reynolds v. Dormire, 636 F.3d 976, 979 (8th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). The complaint against six of the nine officers—Balvik, Runcorn, Stanton, Cruff, Boyer, and Warren—does not meet that standard. Facts in the complaint which are not favorable to Klebe's claims - that those six officers were not at the truck crash site, and so could not have been involved in removing Klebe from the vehicle - must be considered. Edwards, 478 F.3d at 830. Considering those unfavorable facts, the complaint does not sufficiently plead plausible claims against any of those six officers.

Under the pleading standards of Twombly and Iqbal, Klebe has not alleged a plausible claim that any of those six officers was personally involved and directly responsible for the alleged use of excessive force or failure to prevent a neck injury. The complaint fails to give defendants Balvik, Runcorn, Stanton, Cruff, Boyer, and Warren fair notice of a claim against them. Therefore, it is recommended that the complaint be dismissed as against those six persons

9

in their individual capacities. As Klebe has named those six persons only in their individual capacities, the complaint in its entirety should be dismissed against each of them.

Construing the complaint and its attachments liberally, one can surmise that Officer Sklyer Dutton, Officer Ryan Wuollet, and Officer Joe Birrenkott were present at the scene when Klebe was removed from his vehicle. One of the WFPD reports states, "The paramedics and officers on scene worked together to remove the driver from the driver's seat out of the car through the passenger's side." (Doc. #6-5 at 1). Accepting as true Klebe's assertions that officers on the scene forcefully pried his foot from where it was lodged, one could conclude that the officers used force that was not objectively reasonable. Liberally construing the totality of the circumstances alleged, see Brown, 574 F.3d at 496, Klebe was removed from his vehicle during the process of arrest, he did not pose an immediate threat to the officers or to others, and he was not actively attempting to resist arrest or to flee. Liberally construed, the complaint and its attachments plead the elements of an excessive force claim. Taking the alleged facts as true, one could conclude that the officers violated a clearly established right to not be subjected to excessive force during the course of arrest, and that a reasonable officer would have known of that clearly established right. Taking the alleged facts as true, the court cannot conclude that the three officers would be entitled to qualified immunity. Nance, 586 F.3d at 604. Dismissal under section 1915A(b)(2) is therefore not appropriate.

Klebe's claim concerning a C-spine injury must be analyzed separately from his claim considering dislodging his foot from his vehicle. The claim involving his C-spine does not allege any use of force. It alleges that the "failure to hold and immobilize Plaintiff's C-spine was objectively unreasonable[.]" (Doc. #6 at 7). At most, Klebe's C-spine injury claim alleges

ordinary negligence against the WFPD officers who were involved in removing him from his vehicle. Negligence does not rise to the level of a constitutional violation. Robinson v. Moreland, 655 F.2d 887, 890 (8th Cir. 1981) (citing Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)). The complaint, including its attachments, fails to state a claim for failure to immobilize Klebe's C-spine. That claim should therefore be dismissed against Officer Sklyer Dutton, Officer Ryan Wuollet, and Officer Joe Birrenkott.

### Claims Against City of West Fargo

The only claim alleged against the City of West Fargo is that the City had a duty to properly train WFPD officers as first responders, and that the City's failure to do so caused Klebe to suffer a neck injury. (Doc. #6 at 9). To hold a municipality liable for inadequate training, a plaintiff must demonstrate specific training deficiencies and either: 1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge; or 2) that training is obviously necessary to avoid constitutional violations. City of Canton v. Harris, 489 U.S. 378, 390 (1989).

Although it may be obvious that it is necessary for the City to train its officers on avoiding use of excessive force, Klebe has asserted no specific facts about the City's alleged failure to train its officers. His claims concerning lack of training are conclusory, insufficient under the pleading standards established by Twombly and Iqbal, and fail to state a claim under City of Canton. The claims against the City of West Fargo should therefore be dismissed.

### Recommendation

For the reasons discussed above, it is **RECOMMENDED** that the complaint against the City of West Fargo, Jason Balvik, Tim Runcorn, Trent Stanton, Derek Cruff, Jerry Boyer, and

Gregory Warren be **DISMISSED** in its entirety without prejudice. It is further **RECOMMENDED** that the complaint against Sklyer Dutton, Ryan Wuollet, and Joe Birrenkott be dismissed without prejudice insofar as it alleges failure to immobilize Klebe's C-spine.

## Order

For the reasons discussed above, **IT IS ORDERED** that the Clerk of Court serve the remaining defendants, Sklyer Dutton, Ryan Wuollet, and Joe Birrenkott, in their individual capacities, with a copy of the complaint. Upon service, defendants are directed to file, within sixty (60) days, an answer or other proper response to Klebe's claim of use of excessive force in dislodging his foot from his vehicle.

Dated this 10th day of April, 2015.

                                            */s/ Alice R. Senechal*
                                            Alice R. Senechal
                                            United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(3), plaintiff may object to this Report and Recommendation and Order by filing with the Clerk of Court no later than April 27, 2015, a pleading specifically identifying those portions of the Report and Recommendation and Order to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals