## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| John Allen Klebe, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:14-cv-45 |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Skyler Dutton, Ryan M. Wuollet, and | ) | |
| Joseph D. Birrenkott, West Fargo Police | ) | |
| Department Officers, in their individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff John Allen Klebe (Klebe) filed a pro se complaint under 42 U.S.C. §

1983, alleging that the defendants, three West Fargo Police Department (WFPD)

Officers, used excessive force in removing him from a vehicle that he crashed while

WFPD police officers were pursuing it.[1] (Doc. #6). The defendants have moved for

summary judgment, asserting there are no questions of material fact as to the officers'

use of excessive force, or as to their entitlement to qualified immunity. (Doc. #72). Klebe

has responded to that motion.[2] (Doc. #76).

### Summary of Recommendation

Klebe has not set forth facts showing questions of material fact as to his claim

that the defendants used excessive force in removing him from his vehicle; the

---

[1] On initial review of the complaint pursuant to 28 U.S.C. § 1915A, the court
dismissed the complaint against six officers and the City of West Fargo because Klebe
had not stated plausible claims against those individuals or the city, and the court also
dismissed Klebe's claim alleging that the defendants failed to prevent a neck injury.
(Doc. #28).

[2] Before defendants filed the instant motion, Klebe filed a document which was
docketed as a supplement to his complaint. (Doc. #71). In considering the summary
judgment motion, the court has considered that document and its accompanying
exhibits, along with Klebe's response to the summary judgment motion. (Doc. #76).

defendants are therefore entitled to qualified immunity. Accordingly, it is recommended that the defendants' motion for summary judgment be granted, and that Klebe's complaint be dismissed with prejudice.

## Facts

On September 9, 2012, WFPD responded to a reported hit and run collision at a grocery store parking lot. (Doc. #73-1). The following day, a WFPD officer saw a vehicle matching the description of the one involved in the hit and run collision, and the officer attempted to stop that vehicle. Id. Klebe, who was driving the vehicle, did not stop, and a pursuit ensued. Id. During the pursuit, Klebe's vehicle backed into the officer's patrol vehicle and later crashed into a cement truck at a road construction site. Id. Both parties submitted photographs that depict the extensive front-end damage to Klebe's vehicle, which resulted from the collision with the cement truck. (Doc. #71-5; Doc. #73-5; Doc. #73-9).

The defendants' reports detail their involvement in removing Klebe from his vehicle after the collision. The first officer at the crash scene, defendant Ryan M. Wuollet, stated in his report:

> I then approached the vehicle and attempted to provide medical care for the driver and passenger who at the time were both very groggy and unresponsive. The driver was identified as a JOHN ALLEN KLEBE and passenger was identified as an ELLRIC ALFRED GIROUX II. I attempted to open the driver's door, but it was stuck, and I then leaned JOHN back into his seat as he was slouched over and appeared to be having respiratory problems. When I leaned him back he started to breathe normally and at that point became responsive, but very groggy. I then went over to the passenger, ELLRIC, and held his neck and head stable until paramedics arrived as he was complaining of intense neck and chest pain. Paramedics then arrived on scene and then transported ELLRIC and JOHN to the hospital.

(Doc. #6-4, pp. 1-2; Doc. #73-5, pp. 1-2) (emphasis added).

The second officer who arrived at the crash scene was defendant Joseph D. Birrenkott. He reported that after he arrived at the crash scene, he spoke with a witness who believed that Klebe's vehicle's tire hit his vehicle's lug nuts before Klebe collided with the cement truck. (Doc. #6-3, p. 2; Doc. #73-6, p. 2). Officer Birrenkott did not report that he was involved with removing Klebe from his vehicle or that he had any contact with Klebe at the crash scene. After Klebe was transported to a hospital, Officer Birrenkott stated that he was directed to go to that hospital and arrest Klebe for aggravated reckless driving and other possible charges. Id. Officer Birrenkott further reported that when he arrived at the hospital, Klebe was in handcuffs. Id.

Defendant Skyler Dutton, the third officer to arrive at the scene, stated in his report:

> I believe I was the third officer on the scene behind OFFICER RYAN WUOLLET and OFFICER JOE BIRRENKOTT. I went up to the suspect vehicle which was crashed into a cement truck. The vehicle was totaled and the ambulance had already been called. I stayed by the driver and tried to keep him as still as possible while waiting for the ambulance. The passenger of the vehicle was in a lot of pain and was making a lot of noise that his neck hurt and things inside his chest hurt as well . . . . The driver appeared to be unconscious when I first arrived and then he regained consciousness and was able to speak. He asked me on three separate occasions, what had happened, claiming to have no recollection of what happened at all. A short while later, FM Ambulance responded to the scene and was able to remove the passenger out of the passenger[']s side door onto a backboard and he was transported away from the scene by ambulance. The driver's side door that I was standing at was jammed and was unable to be opened. The paramedics and officers on scene worked together to remove the driver from the driver's seat out of the car through the passenger's side. His neck was immobilized and [he] was transported out on a backboard. He was then transported away from the scene by the ambulance.

(Doc. #6-5, p. 1).

Both parties submitted a copy of an F-M Ambulance patient care record.[3] (Doc. #6-2; Doc. #73-8). That record states:

> [Upon arrival] found pt in driver[']s seat of vehicle. Pt was alert and talking but confused. . . . Pt was already in C-collar but nobody was holding C-spine. My partner climbed into vehicle and held C-spine while we worked on getting him out. Pt was asking the same questions over and over again. Pt was unable to be removed from driver[']s side door so he was removed out passenger side with C-spine control the whole time. Pt only complaint is of right ankle pain. Once in ambulance 2nd survey was done. Pt has several small abrasions on arms and head. Small lac to the chin and a small hematoma on top of head. Pt has obvious swelling and deformity to right ankle tib fib area. Pulse strong both radial and pedal. Pt was transported emergent to Essentia due to damage and confusion. En route IV was started and [sic] 16G left forearm. Pt continues to ask what happened and what was going on. Pt care turned over to Essentia trauma team verbal report given.

Id. (capitalization altered). Hospital records state that Klebe suffered an ankle fracture. (Doc. #73-12). The attending physician treated the injury with a brace, directed Klebe to ice and elevate his ankle, and advised follow-up care. Id.

## Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). When the moving party demonstrates that no material facts are in dispute, the nonmoving party then bears the burden of setting forth facts showing a genuine issue for trial. Id. While the court must view all facts and

---

[3] At least three ambulances were at the crash scene, and three people were transported to a hospital—Klebe, his passenger, and the cement truck driver. Klebe was in the third ambulance.

inferences in the light most favorable to the nonmoving party, id., "[f]actual disputes that are irrelevant or unnecessary will not be counted," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate if no reasonable jury could return a verdict for the nonmoving party. Id.

## Qualified Immunity Standard

Qualified immunity shields a government official from liability unless (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the conduct at issue. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Courts have discretion in deciding which prong of the qualified immunity analysis to address first. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). In deciding defendants' summary judgment motion, the court should first consider whether there are genuine questions of fact as to the alleged constitutional violation—Klebe's claim that the defendants used excessive force.

## Discussion

Klebe alleges that the defendants used excessive force in removing him from his vehicle after the crash, resulting in his ankle injury. Klebe makes the following statement of his claim:

> Plaintiff was an arrestee at the scene on September 10th, 2012, by the Defendants. Plaintiff's foot was lodged in the foot pedal area of his crashed and wrecked automobile. Defendant[]s failed to call or wait for the proper extraction personnel and equipment and forcefully pried Plaintiff's foot from the lodged position, and in doing so broke Plaintiff's ankle. This injury resulted directly and only from the use of force that was excessive to the need and this force was objectively unreasonable. Any reasonable officer in this situation would have known that breaking Plaintiff's ankle, in order to place Plaintiff under arrest, was not justified by any legitimate law enforcement

management need, as Plaintiff was hand-cuffed, and this brutality was completely out of proportion to that need and any reasonable officer would know or reasonably should have known, the breaking of Plaintiff's ankle would cause a constitutional violation. There was no need for force or brutality and such is repugnant to the conscience of mankind. Law Enforcement caused serious and needless harm to Plaintiff. See, Exhibit-#1, Page-3, Narrative, which states: ". . . had obvious swelling and deformity to right ankle TIB FIB AREA."

(Doc. #6, pp. 7-8).

Any claim of excessive force by law enforcement officers, whether during the course of an arrest, an investigatory stop, or other seizure, is to be analyzed under the objective reasonableness standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989).[4] In analyzing an excessive force claim, "[t]he key question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Nance v. Sammis, 586 F.3d 604, 610 (8th Cir. 2009) (quoting Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005)) (internal quotation marks omitted). In evaluating the reasonableness of an officer's use of force, a court is to consider the totality of the circumstances, including whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by fleeing. Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009).

---

[4] It is not clear when Klebe was arrested. Klebe contends that he was placed in handcuffs while in his vehicle, and that officers broke his ankle "in order to place [him] under arrest." (Doc. #6, p. 8). Officer Birrenkott reported that he went to the hospital where Klebe was transported to arrest him, but also reported that Klebe was in handcuffs when he (Officer Birrenkott) arrived at the hospital. (Doc. #6-3, p. 2; Doc. #73-6, p. 2). However, when Klebe was arrested is irrelevant under Graham.

Klebe, and the defendants, submitted several videos from the dashboard cameras of the patrol vehicles. (Pl. Ex. #12; Def. Ex. #2). Klebe contends that the video from Officer Wuollet's vehicle—Unit 144—shows an officer "reach down far enough to pry [his] foot free." (Doc. #71, p. 1). Klebe asserts that the officer "pulled so hard four different times that [the officer's] whole body tensed from the exertion[,] and you can see [Klebe's] head jolt back and forth when [the officer] pulls." Id. Klebe argues that the defendants should have waited for fire department personnel to extricate him from the vehicle using the "jaws of life," id. at 2, which he contends was required by WFPD policy, (Doc. #76, p. 1).

The court has reviewed all of the video evidence, including that from Unit 144. That video depicts part of the pursuit leading to Klebe's collision with the cement truck, and the aftermath of that collision. (Pl. Ex. #12; Def. Ex. #2). The video shows that, after the collision, several officers attended to Klebe and his passenger, and several officers repeatedly and unsuccessfully attempted to open the driver's side door. Id. at 11:48:20-12:06. The video demonstrates that F-M Ambulance personnel arrived about ten minutes after the collision. Id. at 11:55.

The court has repeatedly reviewed the portion of the Unit 144 video Klebe cites in support of his claim.[5] The Unit 144 video depicts an unidentified officer reaching into Klebe's vehicle and possibly pulling on something. But, contrary to Klebe's assertion, Klebe is not visible on the video during that time period. It is unclear whether the officer was attempting to open the driver's side door, whether he was aiding F-M ambulance

---

[5] None of the other videos show the officers' conduct during the time period that Klebe asserts an officer used excessive force.

personnel as they removed Klebe from the vehicle through the passenger's side door, whether he was attempting to free Klebe's foot as alleged, or whether there is some other explanation for the officer's movements.[6] Approximately eighteen minutes after the collision, the Unit 144 video shows Klebe being taken to an ambulance. Id. at 12:06.

There are several issues as to Klebe's excessive force claim. First, none of the documentary evidence—the police reports, the F-M Ambulance record, or the medical records—references Klebe's foot being lodged underneath a pedal. Second, Klebe has not identified, nor does the evidence establish, which officer allegedly forcefully dislodged his foot.[7] Third, the videos and photographs do not depict any officer pulling on or prying Klebe's foot out from underneath a pedal. Even assuming proof that one or more officers used force as Klebe alleges, the use of force would be considered objectively reasonable to remove Klebe from the vehicle so that he could receive medical care. Lastly, accepting Klebe's assertion that he was handcuffed prior to being taken out of the vehicle,[8] no other evidence suggests that he was arrested during the approximately

---

[6] Klebe's response to an interrogatory suggests that he does not actually recall an officer pulling his foot out from underneath a pedal. Klebe states, "I recall coming to twice, on one of those times they asked me to raise my hands to handcuff me, at that time my ankle wasn't broken. The only thing I remember asking is what happened[.] [W]hen I came to in the hospital my ankle was broke [and] my right shoe was missing[.] I asked [O]fficer Joe Birrenkott where my shoe [wa]s, he starts laughing [and] says[,] 'Maybe you dropped it in the ambulance.'" (Doc. #73-11, p. 1).

[7] The court could surmise, based on Officer Dutton's report that he "stayed by the driver and tried to keep him as still as possible while waiting for the ambulance," (Doc. #6-5, p. 1), that he was the officer who is seen reaching into Klebe's vehicle and possibly pulling something.

[8] Klebe contends that a photograph, (Doc. #71-5), shows he was handcuffed while in his vehicle. It is difficult to ascertain, based on that photograph, whether Klebe was handcuffed at that time.

eighteen minutes between the collision and his removal from the vehicle. Rather, all of the record evidence demonstrates that the officers were assisting F-M Ambulance personnel in removing Klebe from the vehicle so that he could be transported to a hospital. (See Doc. #73-9) (picture of F-M Ambulance responder sitting in the back seat of Klebe's vehicle securing a neck brace on Klebe, while an officer was leaning into the window and holding or touching Klebe's hand).

In response to defendants' motion to dismiss, Klebe contends that although the medical records do not explain how his ankle was fractured, a physician told him that "a force pulled the ligament from the bone." (Doc. #76, p. 2). Even if it were admissible evidence, that statement does not demonstrate that any of the officers were the "force" that pulled a ligament from the bone, or that any force was excessive. Additionally, Klebe has not offered any medical record evidence that a physician made that statement. Nor does that statement explain how Klebe's ankle bones were broken.

If the moving party has adequately supported its motion for summary judgment, the nonmoving party has an affirmative burden to go beyond the pleadings and show a genuine triable issue of fact. Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992). Klebe challenges the manner in which F-M Ambulance personnel and officers removed him from the vehicle after the collision, but he has not come forward with evidence that any use of force was excessive.[9] Klebe has not met his burden to

---

[9] Klebe also contends that officers lied about his use of a seat belt, and that the WFPD policies he received through discovery are "incomplete" and "intentionally misleading" because they have not been updated since 2003 and because they contain typographical errors. (Doc. #71, p. 2). Those assertions are not germane to Klebe's excessive force claim.

demonstrate a genuine issue of material fact. After considering the totality of the circumstances—including not only that Klebe did not pose a threat and was not actively resisting arrest, but more importantly that any force used by the unidentified officer was in an attempt to provide emergency care to Klebe—if there was any use of force, it was objectively reasonable. Because any use of force was objectively reasonable, there are no questions of material fact as to violation of Klebe's constitutional rights. The court should therefore conclude that the defendants are entitled to qualified immunity.

### Conclusion

For the reasons discussed above, it is **RECOMMENDED** that the defendants' summary judgment motion, (Doc. #72), be **GRANTED**, and that Klebe's complaint, (Doc. #6), be **DISMISSED** with prejudice. It is further **RECOMMENDED** that the court certify that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis.

Dated this 8th day of April, 2016.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

### NOTICE OF RIGHT TO OBJECT

Pursuant to Federal Rule of Civil Procedure Rule 72(a) and (b) and District of North Dakota Civil Local Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than April 25, 2016, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.